**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| BARBARA MEYERS, on behalf of herself and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>1-800-HANSONS, LLC,<br><br>Defendant. | Case No. 2:25-cv-12904 -TGB-KGA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Barbara Meyers ("Plaintiff") brings this Class Action Complaint against Defendant 1-800-HANSONS, LLC ("Defendant" or "Hansons") to redress the Defendant's ongoing violations of the Telephone Consumer Protection Act ("TCPA") through unauthorized telemarketing calls and text messages to individuals whose phone numbers are listed on the National Do Not Call Registry ("National DNC Registry") and to individuals who have expressly requested that the calls/texts stop. Plaintiff seeks both injunctive and monetary relief on behalf of herself and similarly situated individuals harmed by Defendant's conduct. Upon personal knowledge as to herself and upon information and belief and investigation of counsel as to all other matters, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Despite clear statutory prohibitions, Defendant repeatedly places unsolicited marketing calls and text messages to individuals who have expressly requested not to be contacted, bombarding these individuals with calls and messages that persist unabated for several weeks or months, and in some egregious cases, for years.

2. Defendant's conduct reflects a pervasive and ongoing disregard for consumer privacy and federal law, constituting a flagrant, ongoing violation of the TCPA.

3. Plaintiff therefore brings this lawsuit on behalf of herself and all those similarly situated against Defendant for violation of the federal Telephone Consumer Protection Act in order to vindicate the rights of consumers subjected to Defendant's unlawful practices, to halt Defendant's ongoing unlawful practices, to deter future violations, and to ensure that Defendant faces meaningful consequences for its noncompliance.

## PARTIES

4. Plaintiff Barbara Meyers is a resident of Oakland County, Michigan, where she intends to remain.

5. Defendant 1-800-HANSONS, LLC is a Michigan limited liability company, headquartered in Troy, Michigan.

## JURISDICTION AND VENUE

6. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7. This Court has personal jurisdiction over the Defendant because Defendant is organized under the laws of the State of Michigan, headquartered in this District, and does substantial business in Michigan.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is headquartered in this District and directed the violative conduct from this District to the Plaintiff and the Class.

## FACTUAL ALLEGATIONS

### A. Telephone Consumer Protection Act and Unwanted Calls

9. Congress enacted the Telephone Consumer Protection Act in 1991 ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers," *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021), by restricting "the making of telemarketing calls and the use of automatic telephone dialing systems and artificial or prerecorded voice messages."[1]

[1] "FCC Actions on Robocalls, Telemarketing," July 23, 2018, https://www.fcc.gov/general/telemarketing-and-robocalls (last accessed Jan. 30, 2026).

10. In early 2003, the Federal Communications Commission ("FCC"), in coordination with the Federal Trade Commission ("FTC"), established the National Do Not Call Registry ("National DNC Registry"), which allows consumers to add their phone numbers to not receive most legal telemarketing calls.

11. In 2024, "more than 4.2 million people signed up with the DNC Registry, bring the total to more than 253 million actively registered phone numbers."[2]

12. Unwanted calls and texts remain the FCC's leading consumer complaint and its "top consumer protection priority," and have become so prolific that the FCC blanketly advises consumers to simply not answer any calls or respond to messages from unknown numbers.[3]

13. The FTC reported over two million consumer complaints in fiscal year 2024 related to unwanted telemarketing calls, with approximately 1.1. million complaints about robocalls and 763,000 complaints about live callers.[4]

---

[2] "Reports of Unwanted Telemarketing Calls Down More Than 50 Percent Since 2021," Nov. 15, 2024, https://www.ftc.gov/news-events/news/press-releases/2024/11/reports-unwanted-telemarketing-calls-down-more-50-percent-2021 (last accessed Jan. 30, 2026).
[3] Stop Unwanted Robocalls and Texts, Consumer Guides, Mar. 3, 2025 https://www.ftc.gov/news-events/news/press-releases/2024/11/reports-unwanted-telemarketing-calls-down-more-50-percent-2021 (last accessed Jan. 30, 2026).
[4] FY 2024 National Do Not Call Data Book, Nov. 2024, https://www.ftc.gov/system/files/ftc_gov/pdf/DNC-Data-Book-2024.pdf (last accessed Jan. 30, 2026).

14. According to YouMail, one of the largest robocall-blocking companies in the United States, in July 2025 alone, "U.S. consumers endured an estimated 4.3 billion robocalls."[5]

B. **Defendant's Telemarketing System**

15. Defendant is a Michigan-based home improvement company that sells and installs exterior and interior home products, including windows, roofing, siding, patio doors, gutters, showers, and bathtubs, for residential home throughout Michigan, as well as a handful of other states.

16. Defendant actively solicits consumers through calls and text messages to generate business, including consumer purchases of Defendant's products and installation services.

17. A core part of Defendant's business is placing telemarketing calls and sending telemarketing text messages to generate business.

18. In its current job postings, Defendant states that it has "recently DOUBLED [its] call center team and increased [its] marketing…"

---

[5] "July 2025 Robocall Breakdown: The Top 5 Hardest-Hit Cities and the Biggest Risers," Aug. 15, 2025, https://blog.youmail.com/2025/08/july-2025-robocall-breakdown-the-top-5-hardest%e2%80%91hit-cities-and-the-biggest-risers/ (last accessed Jan. 30, 2026).

**Sales Consultant**
Contractor - 1099
**Kalamazoo, MI, US**

*7 days ago*
Requisition ID: 1624
Apply

**Salary Range:** $80,000.00 To $150,000.00 Annually

***We have recently DOUBLED our call center team and increased our marketing which means we have more leads/appointments than sales reps!*** Come join a highly reputable home improvement company that offers pre-screened appointments, flexible schedule, uncapped commissions earning up to $150k in first year and so much more!

1-800 Hansons has been one of the top home improvement companies based in Michigan and Ohio for over 37 years. We are now in 14 states across the country with 24 locations. We are continuously growing in locations as well as products, which also means a lot of internal growth opportunities!

As a Sales Consultant with 1-800 Hansons, you focus on a customer relationship based sales process to give a 5-star experience. Our sales process involves pre-screened qualified appointments provided, AI Tools provided to retrieve accurate measurements of the exterior of the home with ease as well as provide a visual of the completed install during the sales appointment!

To be a Sales Consultant with 1-800 Hansons, experience isn't necessary as we provide training to help you develop and be successful on the team! We also welcome those with talent that have been in the sales industry for years that are ready to join an opportunity that pays what you put into it!

19. Based upon investigation of counsel, Defendant employs an aggressive calling and texting strategy that relies on placing large volumes of calls to consumers from an extensive and constantly rotating set of phone numbers.

20. Defendant relentlessly contacts consumers for a prolonged period, with consumers typically experiencing calls every day, and sometimes multiple times per day by different agents.

21. Many of the phone numbers used by Defendant share the same area code as the targeted consumers, a tactic commonly used to increase the likelihood that the recipients answer the calls.

22. The breadth and rotation of originating numbers and systematic use of localized numbers strongly indicates that Defendant is purchasing and exploiting Voice of Internet Protocol (VoIP)-based phone services, which enable the purchase of bulk phone numbers across multiple area codes.

23. The extensive rotation and localization of originating numbers allow Defendant to obscure the source and identity of its calls, evade detection, and circumvent call-blocking, consumers safeguards, and accountability mechanisms.

24. A February 2025 Glassdoor posting from one of Defendant's employees reveals that call center agents make hundreds of calls per day, and that Defendant's dialer calls the same customers multiple times per day and indiscriminately selects consumer phone numbers.


1-800-Hansons
Engaged Employer
Follow

Overview | 125 Reviews | 24 Jobs | 115 Salaries | 28 Interviews | 24 Benefits

Helpful Share

1.0 ★ Feb 18, 2025

Enter at your own risk

Customer service representative

Current employee, less than 1 year | Sterling Heights, MI

Recommend | CEO approval | Business outlook

Pros

Company seems to value their workers with monetary rewards, theme office celebrations, and I also appreciated them celebrating black history month.

Cons

Way too many phone calls. Phone dials outbound calls on its own so you never know when you could otp with someone. Doesn't understand that their dialer is dialing the same customer 20x times a day no matter what the reason I input for the call. Hundreds of phone calls a day for little pay.

Advice to Management

Do better and listen to your workers

Helpful Share

C. **Defendant Calls Consumer Numbers Listed on the National DNC Registry**

25. Defendant fails to comply with federal restrictions for calling numbers on the National DNC Registry.

26. Defendant consistently makes unsolicited telemarketing calls and text messages to consumers registered with the National DNC Registry without permission or consent from the consumer, as demonstrated by Plaintiff's experienced described herein.

27. Defendant's repeated telemarketing communications to Plaintiff Meyers as described herein and to other consumers whose numbers are registered on the National DNC Registry demonstrate, among other things, a failure to properly implement and maintain procedures to prevent calls to registered numbers, including a failure to screen call lists against registered numbers in violation of federal law.

28. Defendant's conduct described herein reflects a pattern and practice of called National DNC Registry-listed numbers.

29. At all relevant times, Defendant knew, or should have known, that its telemarketing practices violated the TCPA and its implementing regulations governing the National DNC Registry. Defendant is a sophisticated commercial entity engaged in telemarketing and was well aware of its statutory obligation, including the prohibition on initiating telephone solicitations to numbers registered on the National Do Not Call Registry absent an applicable exemption.

30. Despite this knowledge, Defendant knowingly and deliberately placed, or caused to be placed, telephone solicitations to numbers listed on the National Do No Call Registry, including Plaintiff's phone number as described herein.

31. Defendant's continued telemarketing activity in the face of these well-established legal requirements demonstrates its violations were knowing and/or willful.

32. The volume and repetition of calls made to numbers on the Registry further evidence the willful and knowing nature of Defendant's violations, demonstrating a systematic and deliberate disregard for compliance rather than isolated or inadvertent error.

D. **Defendant Ignores Consumers' Stop Requests**

33. As evidenced by Plaintiff's experience of continuing to receive calls and texts messages over a multi-year period despite early and repeated instructions to Defendant to stop calling and messaging her, Defendant failed to institute adequate procedures for maintaining a list of persons who request not to receive telemarketing calls that meet the required minimum standards.

34. Defendant failed to implement and maintain a reasonable and effective internal do-not-call system and procedures designed to ensure that consumers who request that Defendant cease calling and/or texting them are promptly and accurately

recorded on Defendant's internal do-not-call list and excluded from future telemarketing communications.

35. Defendant provided Plaintiff with a document it claims is the DNC policy for the relevant period.

36. The provided DNC policy includes only two brief sentences relating to maintenance of an internal do-not-call list, stating, "If the customer and/or potential customer requests to not receive any further telemarketing calls from 1-800-HANSONS, you must properly note this request. 1-800-HANSONS will then, in accordance with applicable law, remove that phone number from 1-800-HANSONS' calling lists."

37. The DNC policy is vague and conclusory, and does not, among other things, define what "properly note" means, provide timelines for honoring requests, provide confirmation procedures that a stop request has been record, address how requests apply across various channels (e.g., voice, text), or how Defendant effectuates any recorded request to remove the phone number from its calling lists.

38. In practice, Defendant routinely disregards consumer opt-out requests, including requests made verbally during live calls and through other reasonable means.

39. The volume and repetition of calls made to individuals who requested Defendant stop calling evidence that such requests are not recorded, recorded but

never effectuated through removal from Defendant's calling lists, and/or Defendant's personnel are not adequately trained to receive, document, and process such requests in compliance with the law.

40. As a result of Defendant's inadequate procedures, consumers who have expressly instructed Defendant to stop calling and/or texting them, or who have otherwise requested placement on Defendant's internal do-not-call list, continue to receive telemarketing calls and/or text messages from Defendant after making such requests, including at least one call or text made well beyond a reasonable period and often beyond thirty (30) days from the date the opt-out request was made.

41. Rather than isolated or inadvertent errors, Defendant's telemarketing practices routinely place repeated telemarketing calls and/or text messages to the same consumers after opt-out requests have been made well beyond a reasonable period and often beyond thirty (30) days from the date the opt-out request was made, reflecting a systemic failure.

42. Defendant's continued telemarketing communications to consumers who have opted out demonstrate, among other things, that Defendant lacks adequate policies and training for handling do-not-call requests; fails to maintain or properly update an internal do-not-call list; fails to promptly record consumers' names and telephone numbers at the time opt-out requests are made; and/or fails to implement

systems capable of preventing further calls or text messages to consumers who have exercised their right to opt out.

43. At all relevant times, Defendant knew, or should have known, that its telemarketing practices violated the TCPA and its implementing regulations requiring entities engaged in telemarketing to maintain and honor an internal do-not-call list. Defendant is a sophisticated commercial entity engaged in telemarketing and was well aware of its statutory obligation to record consumers' do-not-call requests and refrain from initiating further telephone solicitations to those consumers.

44. Defendant received and/or had the ability to receive do-not-call requests from consumers, including Plaintiff, yet failed to implement adequate procedures to ensure compliance with those requests.

45. Despite this knowledge, Defendant knowingly and deliberately placed, or caused to be placed, telephone solicitations to consumers who had previously requested not to be called, including Plaintiff as described herein.

46. Defendant's continued telemarketing activity in violation of these well-established legal requirements demonstrates its violations were knowing and/or willful.

47. The volume and repetition of calls made to individuals who had requested Defendant stop calling further evidence the willful and knowing nature of

Defendant's violations, demonstrating a systematic and deliberate disregard for compliance.

**E. Plaintiff Barbara Meyers' Experience**

48. Plaintiff Barbara Meyers is the sole owner and user of her cell phone ending in -1083.

49. Plaintiff Barbara Meyers registered her cell phone with the National DNC Registry. This was done at a minimum before the events described in this Complaint occurred.

50. To the best of her recollection, Plaintiff Meyers registered her cell phone with the National DNC Registry around June 2003.

51. Plaintiff uses her cell phone primarily to communicate with friends and family. It is also used to schedule personal appointments and for other personal and household needs.

52. Plaintiff pays for her cell phone number in full. The phone number is not reimbursed by a business.

53. Despite Plaintiff Meyers' residential telephone number being registered on the National DNC Registry for well over thirty-one (31) days prior to Defendant's communications, Defendant repeatedly initiated unsolicited telemarketing calls and text messages to Plaintiff Meyers' number without her prior express invitation or permission.

54. Plaintiff Meyers has never initiated contact with Defendant to inquire about its product or services, done business with Defendant, nor otherwise consented to receive communications from Defendant.

**a. Phone Calls**

55. Beginning approximately two to three years prior to the initiation of this action, Plaintiff Meyers began receiving unsolicited telephone calls from live agents who identified themselves as calling on behalf of Defendant, whose business is the sale of home-improvement products.

56. Since the start of the calls, Plaintiff Meyers has continued to receive multiple telemarketing calls from Defendant each year on a recurring basis to the present day, including stretches of daily calls, multiple calls within a single day, and periods of weekly calls.

57. Most, if not all, of the calls Plaintiff Meyers received originated from numerous, varied telephone numbers.

58. Beginning approximately 2-3 years ago when the calls began and continuing thereafter, Plaintiff Meyers answered several of these telemarketing calls from Defendant and spoke with live agents.

59. Although Plaintiff Meyers does not recall the precise wording of every call, the callers identified themselves as calling on behalf of Defendant and discussed and promoted Defendant's products and services, inquired into Plaintiff Meyers'

interest in purchasing such products and services, and/or attempted to obtain a potential sale.

60. The calls were not related to any existing account, transaction, service inquiry, or informational purpose, and Plaintiff Meyers had no prior relationship with Defendant.

61. Although Plaintiff Meyers does not recall the exact date of her first stop request, she recalls that she answered one of Defendant's early calls within the first months after the calls began and she expressly requested that Defendant cease calling her.

62. In multiple additional calls she answered thereafter over the period of two to three years, Plaintiff Meyers repeated her stop requests, including asking for Defendant to stop calling her, expressing that she had no interest in or need for Defendant's product or services, or requesting to be removed from Defendant's call list.

63. Despite Plaintiff Meyers' repeated do-not-call requests and her clear lack of interest, Defendant continued to place numerous telemarketing calls to Plaintiff Meyers' personal number over the same multi-year period, plainly beyond any reasonable period and significantly beyond thirty days.

64. Plaintiff Meyers attempted to block further calls from Defendant by placing the numbers that called her on her blocked call list, but Defendant's use of

varying numbers as described herein made it difficult for Plaintiff Meyers to avoid or block the calls.

65. Most recently, in or around the beginning of August 2025, Plaintiff Meyers received and answered multiple unsolicited telemarketing calls from live agents who identified they were calling on behalf of Defendant and marketing Defendant's products and services as described herein.

66. Plaintiff Meyers answered at least two of these calls and, in each call, expressly told Defendant's agents that she wanted Defendant to stop calling her.

67. Despite these explicit and repeated do-not-call requests, Plaintiff Meyers received at least one additional telemarketing call from Defendant several weeks later.

**b. Text Messages**

68. During the same two-to-three-year period described herein, Plaintiff Meyers also received unsolicited automated text messages sent on behalf Defendant that promoted Defendant's goods and/services.

69. Plaintiff Meyers identified these texts as coming from Defendant as the content of the text included the company name "1-800-HANSONS."

70. Although Plaintiff Meyers does not recall the exact wording of every text message, the messages referenced Defendant's products or services and were

reasonably understood by Plaintiff Meyers to be promotional and intended to solicit a purchase of Defendant's products.

71. The text messages were not related to any existing account, transaction, service inquiry, or informational purpose, and Plaintiff Meyers had no prior relationship with Defendant.

72. Over this period, Plaintiff Meyers notified Defendant that she did not want to receive text messages and requested that Defendant stop sending messages to her telephone number. In response to at least one of Defendant's marketing text messages, Plaintiff replied "STOP" in all capital letters.

73. Despite Plaintiff's opt-out requests and her use of the "STOP" command, Defendant continued to send automated marketing text messages to Plaintiff's telephone number on a recurring basis over the multi-year period.

74. As a recent illustrative example of Defendant's conduct, in or around the beginning of August 2025, Plaintiff received at least one unsolicited telemarketing text message from Defendant.

75. Plaintiff responded "STOP" in all caps at least once in response to these text messages.

76. Despite Plaintiff's opt-out request, Plaintiff received at least one additional text message in the following weeks.

77. Plaintiff Meyers' experience mirrors that of numerous other consumers who received calls and/or text messages from or on behalf of Defendant.

**F. Harms to Plaintiff and the Class**

78. Defendant's unauthorized communications have caused Plaintiff and the Class harm, including but not limited to, invasion of privacy, intrusion upon seclusion, aggravation, inconvenience, annoyance, nuisance, wasted time, occupation of phone lines, disruption to daily life, and disturbing the use and enjoyment of their personal phone.

79. To remedy these injuries, Plaintiff, individually and on behalf of a Class of similarly situated individuals, brings this action under the TCPA.

## CLASS ALLEGATIONS

**A. Class Definition**

80. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 and seeks certification of the following preliminary defined Classes (collectively, the "Class"):

> **National Do Not Call Class**: All persons in the United States who, within the four years prior to the filing of this action, (1) Defendant called more than one time on their residential telephone, (2) within any 12-month period, (3) promoting Defendant's goods and/or services, (4) without the person's prior

express invitation or permission, and (5) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days.

**Internal Do Not Call Class**: All persons in the United States who, within the four years prior to the filing of this action, (1) Defendant called more than one time on their residential telephone, (2) within any 12-month period, (3) promoting Defendant's goods and/or services, (4) with at least one of the calls occurring after the allowable reasonable period (in place at the time) from the person's request that Defendant stop making such communications.

81. The following individuals are excluded from the Class: Defendant, its officers, directors, employees, any entity in which either Defendant or its parent(s) have a controlling interest, affiliates, legal representatives, attorneys, successors, heirs, and assigns, as well as any judicial officer presiding over the matter and their immediate family members and staff.

82. Plaintiff reserves the right to amend or modify the Class definitions after having had an opportunity to conduct discovery.

**B. Numerosity. Fed. R. Civ. P. 23(a)(1).**

83. The members of this Class are so numerous that joinder of all Class Members in a single proceeding is impracticable. Based on counsel's investigation,

the Class includes, at a minimum, thousands of members. Although the exact number of Class Members is presently unknown, the exact number of Class Members is readily ascertainable from information and records in the possession, custody, or control of Defendant.

**C. Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).**

84. Common questions of law and fact exist among all members of the proposed Class and predominate over any potential questions affecting only individual Class Members. Such common questions of law and fact include, but are not limited to:

a. Whether Defendant's conduct violated the TCPA;

b. Whether Defendant placed multiple telemarketing calls and/or text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days at the time of each call/text;

c. Whether Defendant engaged telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

d. Whether Defendant negligently or willfully and/or knowingly violated the TCPA as alleged herein;

e. The nature and extent of the relief to which Plaintiff and the Class are entitled to recover under the TCPA.

f. Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

**D. Typicality. Fed. R. Civ. P. 23(a)(3).**

85. Plaintiff's claims are typical of the claims of the Class. Plaintiff is a member of each proposed Class, and her claims arise from the same wrongful acts and practices of Defendant as alleged herein that give rise to the claims of the proposed Class Members. Defendant has acted in a uniform manner with respect to Plaintiff and the Class Members with respect to placing telemarketing calls and messages, handling do-not-call requests, and calling individuals registered with the National DNC Registry.

**E. Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).**

86. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions.

87. Plaintiff has no interests antagonistic or adverse to the Class and is subject to no unique defenses.

88. Plaintiff's counsel will vigorously prosecute this action and fairly and adequately represent and protect the interests of Plaintiff and the absent Class Members.

**F. Superiority. Fed. R. Civ. P. 23(b)(3), and 23(b)(1) and (b0(2).**

89. A class action is superior to any other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Prosecution of individual actions is economically impracticable for individual Class Members;

b. Absent class-wide relief, Defendant is likely to persist in the harmful conduct alleged herein and continue to derive benefits from such conduct;

c. Prosecution as a class action will eliminate the risk of repetitious litigation and/or promote uniformity in adjudication;

d. Individual claims would create a risk of adjudications which would be dispositive of the interests of other individuals, and/or substantially impair or impede their ability to protect and pursue their interests;

e. Plaintiff seeks relief relating to the Defendant's common actions that impact members of the Class uniformly, and the equitable relief sought would benefit the Class as a whole; and

f. A class action will be efficient and promote economy of time, effort, resources, and expenses.

**FIRST CAUSE OF ACTION**
**Violations of Telephone Consumer Protection Act, 47 U.S.C. § 227**
**On behalf of Plaintiff Meyers and the National Do Not Call Class**

90. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91. Pursuant to 47 U.S.C. § 227(c)(5), a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" has a private right of action.

92. As described herein, Plaintiff received more than one telephone call in a 12-month period made by the Defendant to her personal number registered on the National DNC Registry, in violation of 47 C.F.R. §64.1200(c)(2).

93. Pursuant to implementing regulation 47 C.F.R. §64.1200(c)(2), "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

94. As described herein, Plaintiff's personal cell phone is a residential telephone for purposes of 47 U.S.C. § 227(c)(5) and 47 C.F.R. 64.1200(c)

95. Defendant's calls and/or messages to Plaintiff are "telephone solicitations" as they were initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, in particular the sale or

purchase of Defendant's goods and/or services as described herein. 47 C.F.R. §64.1200(f)(12).

96. As described herein, Defendant has violated 47 C.F.R. §64.1200(c)(2) by initiating, or causing to be initiated, telephone solicitations to Plaintiff who registered their respective personal phone numbers on the National DNC Registry, without her prior express invitation and/or an established business relationship.

97. As a direct and proximate result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered harm, including but not limited to, invasion of privacy, intrusion upon seclusion, aggravation, inconvenience, annoyance, nuisance, wasted time, occupation of phone lines, disruption to daily life, and disturbing the use and enjoyment of their personal phone.

98. As a result of Defendant's violations, Plaintiff and the Class are entitled to damages, either $500 in statutory damages for each violation or actual damages for each violation, whichever is greater. 47 U.S.C. § 227.

99. As described herein, Defendant's violations of the TCPA were willful and knowing, and Plaintiff and the Class are entitled to an increase in the monetary award up to three times the amount. 47 U.S.C. § 227(c)(5).

100. Defendant's unlawful actions and practices, as alleged herein, are ongoing and Plaintiff faces a substantial and continuing risk of receiving further unlawful communications from Defendant. As described herein, Defendant

routinely places telephone solicitations to numbers listed on the National DNC Registry and Plaintiff has received multiple telephone solicitations from Defendant while her number was registered on the National DNC Registry, making it highly likely that Plaintiff will be subjected to additional unlawful calls from Defendant in the future. Plaintiff and the Class are therefore seeking, and entitled to, an injunction that, among other things, requires Defendant to cease the unlawful calling activity described herein and prohibits Defendant from engaging in or continuing such practices.

## SECOND CAUSE OF ACTION
**Violations of Telephone Consumer Protection Act, 47 U.S.C. § 227**
**On behalf of Plaintiff Meyers and the Internal Do Not Call Class**

101. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

102. Pursuant to 47 U.S.C. § 227(c)(5), a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" has a private right of action.

103. As described herein, Plaintiff has received more than one telephone call to their personal number within a 12-month period in violation of 47 C.F.R. § 64.1200(d).

104. Incorporating regulation 47 C.F.R. § 64.1200(d) prohibits any person or entity from initiating "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity," and such procedures must meet minimum standards for: (a) a written policy; (b) training of personnel; (c) recording and disclosure of do-not-call requests; (d) identification of callers and telemarketers; (e) affiliated persons or entities; and (f) the maintenance of do-not-call lists. 47 C.F.R. § 64.1200(d) applies to "any person or entity making telephone solicitations or telemarketing or text messages calls or text messages to wireless telephone numbers[.]" 47 C.F.R. § 64.1200(e).

105. Pursuant to 47 C.F.R. § 64.1200(d)(3), do-not-call requests must be honored "within a reasonable time from the date such request is made" not to exceed either thirty days or ten business days from the receipt of the request.[6]

106. As described herein, Plaintiff's personal cell phone is a residential telephone for purposes of 47 U.S.C. § 227(c)(5) and 47 C.F.R. 64.1200(d).

107. Defendant's calls and/or messages to Plaintiff and the Class were telephone solicitations for telemarketing purposes within the meaning of 47 C.F.R.

[6] The revision to 47 C.F.R. 64.1200 reducing "not to exceed" period to 10 business days took effect on April 11, 2025. Prior to that date, the "not to exceed" period was 30 days.

§ 64.1200 as the calls and/or text messages were initiated to promote the sale or purchase of Defendant's goods and/or services.

108. Defendant is a large, sophisticated and technologically advanced company, and with its sophistication, size, and automation, is capable of honoring a consumers' stop request immediately or in an extremely short amount of time.

109. Despite this capability, Defendant purposefully ignores consumers' stop requests in order to maximize the number of attempts it has to make or close a sale.

110. Alternatively, Defendant's training of its employees and/or agents on procedures for recording and/or honoring stop requests is so deficient as to allow for rampant disregard for such requests.

111. Based on Defendant's failure to honor Plaintiff's numerous do-not-call requests over a multi-year period and continuing to place calls to Plaintiff beyond a reasonable period after such requests as described herein, Defendant violated 47 C.F.R. § 64.1200(d) by initiating, or causing to be initiated, calls for telemarketing purposes to residential telephone subscribers without instituting appropriate procedures for maintaining an internal do-not-call list, including, among other things:

a. Failing to implement and/or maintain an adequate record of consumer requests not to receive further calls;

b. Failing to maintain an adequate written policy for recording and/or honoring revocation or internal do-not-call list requests;

c. Failing to adequately train its personnel regarding its internal do-not-call list and related policy and procedures; and/or

d. Failing to timely and properly record individual requests not to receive calls;

e. Failing to abide by do-not-call requests within a reasonable period; and/or

f. Failing to honor do-not-call requests for at least five years from the time the request is made.

112. As a direct and proximate result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered harm, including but not limited to, invasion of privacy, intrusion upon seclusion, aggravation, inconvenience, annoyance, nuisance, wasted time, occupation of phone lines, disruption to daily life, and disturbing the use and enjoyment of their personal phone.

113. As a result of Defendant's violations, Plaintiff and the Class are entitled to damages, either $500 in statutory damages for each violation or actual damages for each violation, whichever is greater. 47 U.S.C. § 227.

114. As described herein, Defendant's violations of the TCPA were willful and knowing, and Plaintiff and the Class are entitled to an increase in the monetary award up to three times the amount. 47 U.S.C. § 227(c)(5).

115. Defendant's unlawful actions and practices, as alleged herein, are ongoing and Plaintiff faces a substantial and continuing risk of receiving further unlawful communications from Defendant. As described herein, Defendant routinely places multiple calls for telemarketing purposes to individuals who have requested not to be contacted and Plaintiff has received multiple telephone solicitations from Defendant long after a reasonable period from the date of their initial request, making it highly likely that Plaintiff will be subjected to additional unlawful calls from Defendant in the future. Plaintiff and the Class are therefore seeking, and entitled to, an injunction that, among other things, requires Defendant to cease the unlawful calling activity described herein and prohibits Defendant from engaging in or continuing such practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, request that the Court grant judgment in favor of Plaintiff and the Class and award the following relief:

A. Enter an order certifying the proposed Class, appointing Plaintiff as the representatives of the Class, and appointing Plaintiff's attorneys as Class Counsel;

B. Award Plaintiff and the Class actual, compensatory, statutory, and/or treble damages as allowable by law in an amount to be determined at trial;

C. Order injunctive relief as pleaded herein or as the Court may otherwise deem proper;

D. Enter an award of reasonable attorneys' fees, costs, and expenses;

E. Enter an award of pre- and post-judgment interest; and

F. Award such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 3, 2026

Respectfully submitted,

COULSON P.C.

*/s/ Nicholas A. Coulson*

Nicholas A. Coulson (P78001)
Courtney Rygalski (P89049)
300 River Place Drive, Ste 1700
Detroit, MI 48207
(313) 644-2695
Nick@CoulsonPC.com
CRygalski@CoulsonPC.com

*Counsel for Plaintiff and the Putative Class*